**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MOISES PLEITEZ CASTILLO, | Case No.: 2:26-cv-00777-APG-BNW |
| Petitioner | **Order Granting in Part Amended Petition for Writ of Habeas Corpus** |
| v. | [ECF No. 8] |
| MARKWAYNE MULLIN, et al., | |
| Respondents | |

Petitioner Moises Mario Pleitez Castillo (Pleitez) is a citizen of El Salvador currently detained by U.S. Immigration and Customs Enforcement (ICE). ECF Nos. 8 at 2-3; 9-4 at 2.  He applied for admission at the port of entry in Miami when he was 17 years old, and he was paroled into the United States under the Central American Minors (CAM) Refugee and Parole Program, valid through May 23, 2018. ECF Nos. 8 at 2; 9-4 at 4.  He received employment authorization in July 2016. ECF No. 9-4 at 4.  In March 2018, as the expiration date for his parole was coming due, he "applied for Travel Documents, Parole Documents and Arrival/Departure Records, Form I-131." *Id.*  The United States Citizenship and Immigration Services (USCIS) "approved [his] application for Form I-131, valid until December 15, 2027." *Id.*

In February 2025, he was convicted of misdemeanor driving under the influence. *Id.* at 4, 6-7, 11.  In November 2025, the Las Vegas Metropolitan Police Department arrested Pleitez for domestic battery by strangulation. *Id.* at 4.  The next month, he pleaded guilty to attempted battery by strangulation and stipulated to felony treatment of the charge. ECF No. 9-5 at 2.  The State did not oppose probation and did not oppose Pleitez's release on his own recognizance following his guilty plea. *Id.*  Additionally, the State agreed that if he successfully completed

probation, it would not oppose the charge being reduced to a gross misdemeanor with credit for time served. *Id.* at 2-3.

ICE placed an immigration detainer on Pleitez while he was in the Clark County Detention Center in Las Vegas and took custody of him on December 9, 2025. ECF No. 9-4 at 3. The next day, ICE served Pleitez with a notice to appear that charged him with being an arriving alien who is not a citizen or national of the United States and who did not have valid entry documents. ECF No. 9-3 at 2-4.

On February 5, 2026, an immigration judge (IJ) denied Pleitez's motion for custody redetermination, concluding that he was "subject to mandatory custody, as his offense falls under Section 236(c) as amended by the Laken Riley Act." ECF No. 9-1 at 2.  Alternatively, she found that even if the Laken Riley Act did not compel detention, Pleitez's two recent convictions in 2025 made him a danger to the community.[1] *Id.*; ECF No. 10 at 0:03:58-0:04:30.  Pleitez did not appeal this determination. ECF No. 16 at 8 & n.12.

On March 16, 2026, Pleitez filed his initial uncounseled petition for writ of habeas corpus. ECF No. 1-1.  He subsequently filed his counseled first amended petition. ECF No. 8. That petition raises five grounds for relief.  Ground one asserts that his detention without an individualized pre-custody determination violates his due process rights.  Ground two alleges that his detention should be governed by 8 U.S.C. § 1226(a), and detention under that section is warranted only if he is a flight risk or danger to the community.  Ground Three asserts that subjecting him to mandatory detention under the Laken Riley Act violates the Immigration and

---

[1] The IJ also referred to "jurisdictional hurdles," but she "put[] those concerns aside." ECF No. 10 at 0:00:38; *see also id.* at 0:01:10-0:018 (asking Pleitez's counsel why, even if jurisdictional issues were bypassed, Pleitez should not be detained as a danger).  The IJ did not explain on the record what jurisdictional hurdles she was referencing nor did she rely on lack of jurisdiction to deny bond.

Nationality Act (INA) and due process. Ground Four alleges that the IJ's decision that he is a danger to the community is legally erroneous and not supported by the evidence, so his continued detention violates his due process rights. Ground Five claims that he should be released or receive a new bond hearing because his counsel was ineffective at his bond hearing, which violates his Fifth Amendment due process rights. The government opposes, arguing that there was no due process violation and that Pleitez must exhaust his administrative remedies for the claims related to the bond hearing.

## I. Habeas Corpus Petition

The Constitution guarantees that the writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art I. § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Immigr. & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003). I have "equitable discretion" "as law and justice require" for remedying unlawful detention in habeas petitions. *Brown v. Davenport*, 596 U.S. 118, 128, 124 (2022) (quotation omitted).

/ / / /

## II. Ground One – Due Process

Pleitez argues that under the *Mathews v. Eldridge*[2] three-factor balancing test, his detention without an individualized pre-custody determination violates his due process rights. As to the first factor, he asserts he has a strong liberty interest in being free from detention and he has been at liberty in the United States while on parole. As to the second factor, he asserts that the apparent lack of procedure before ICE detained him created a high risk of erroneous deprivation. He argues that he had been in the United States for nearly ten years before ICE detained him, and the mere fact of his arrest on the domestic violence charge does not excuse ICE from informing him of the reasons for its decision to revoke his release and giving him an opportunity to rebut those reasons. As for the third factor, he asserts that the governmental interest in detaining him without an individualized pre-deprivation hearing is minimal.

The government responds that Pleitez was not on parole when ICE detained him because his parole expired in 2018. It contends that even if he was on parole, that parole was properly terminated through the notice to appear that detailed the allegations against him that he was not a citizen, that he lacked valid documentation permitting him to be in the country, and that he therefore was subject to removal. The government asserts that the *Mathews v. Eldridge* factors do not support finding a due process violation because, although it acknowledges he has an interest in being free from detention, nothing in the record suggests there was a significant risk of erroneous deprivation given his criminal history, particularly the strangulation offense. As to the third factor, the government argues that it has a strong interest in control over immigration matters and to protect the community from dangerous criminals. It also contends that Pleitez has

---

[2] 424 U.S. 319 (1976).

already had a bond hearing at which the IJ found him to be a danger to the community, so no further procedures are required.

Pleitez replies that the government incorrectly argues that he was not on parole because its own records show that his application to be re-paroled was approved in 2022 with a parole expiration date of December 2027.  He also argues that other courts have found that the government cannot summarily revoke parole without offending due process and that "due process for parole termination requires (1) a decision by an appropriate official on whether the purpose of parole has been served; (2) written notice of the reasons for termination; and (3) an opportunity to rebut the reasons given for termination." ECF No. 16 at 3 (quotation omitted).

**A.  Pleitez was on parole when he was detained.**

The government argues that Pleitez's parole expired in 2018.  However, the government's own records indicate his parole was extended through 2027. ECF No. 9-4 at 4. The government has access to its own records and could have explained what USCIS approved on his Form I-131 if it was something other than a parole extension.  It has provided no contrary explanation, nor has it provided the Form I-131 or its approval.  Based on the record before me, Pleitez was on parole when he was detained.

**B.  I grant Pleitez post-detention notice and an opportunity to be heard on parole revocation.**

The Fifth Amendment's due process clause forbids the federal government from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. V.  "To be entitled to procedural due process, a party must show a liberty or property interest in the benefit for which protection is sought." *Buckingham v. Sec'y of U.S. Dep't of Agric.*, 603

F.3d 1073, 1081 (9th Cir. 2010).  "If the party establishes that such an interest exists, a court determines what process was due and whether the party was actually afforded such process." *Id.*

The respondents agree that Pleitez has a liberty interest in being free from detention, so he has an interest protected by the due process clause. ECF No. 14 at 8.  "Once it is determined that due process applies, the question remains what process is due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

The parties dispute what process Pleitez is due under the three factors of the *Mathew v. Eldridge* test.[3]  Under that balancing test, I evaluate "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335).  The Constitution typically "requires some kind of a hearing before the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis omitted).  "In some circumstances, however, . . . a statutory provision for a postdeprivation hearing . . . satisfies due process." *Id.* at 128.  Also, an "important government interest, accompanied by a substantial assurance that the deprivation is not baseless or unwarranted, may in limited cases demanding prompt action justify postponing the opportunity to be heard until after the initial deprivation." *Fed. Deposit Ins. Corp. v. Mallen*, 486 U.S. 230, 240 (1988).  Other situations where a post-deprivation hearing may suffice include in an

---

[3] The Ninth Circuit has "assume[d] without deciding that *Mathews* applies" in another context of the detention of noncitizens. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1205-07 (9th Cir. 2022) (evaluating a challenge to prolonged detention under 8 U.S.C. § 1226(a)).  The parties argue only the *Mathews* test, so I likewise apply that test in this case.

6

emergency, "if notice would defeat the entire point of the seizure," or "when the interest at stake is small relative to the burden that giving notice would impose." *Clement v. City of Glendale*, 518 F.3d 1090, 1093-94 (9th Cir. 2008); *Zinermon*, 494 U.S. at 132.

Starting with the private interest that will be affected by the official action, Pleitez's interest in being free from physical detention by the government is "the most elemental of liberty interests." *Hamdi*, 542 U.S. at 529; *see also Foucha v. Louisiana*, 504 U.S. 71, 83 (1992) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." (quotation omitted)). Pleitez has lived in the United States since 2016 and obtained employment authorization. Although humanitarian parole under 8 U.S.C. § 1182(d)(5)(A) does not equate to admission into the country, Pleitez has lived in the country unrestrained and was able to do "a wide range of things open to" non-detained individuals, such as being "gainfully employed and [being] free to be with family and friends and to form the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. He thus "has relied on at least an implicit promise that parole will be revoked only" by the procedures and for the reasons set forth in the applicable statute and regulation. *Id.* (evaluating due process requirements for the revocation of parole following a criminal conviction). The first *Mathews* factor thus weighs in Pleitez's favor.

As for the second factor, the statute and the regulation provide some protection against the risk of erroneous deprivation by specifying the circumstances that will support revocation and by requiring written notice and decision by an authorized official. The statute under which Pleitez was granted humanitarian parole, § 1182(d)(5)(A), provides that the Attorney General may

in his discretion parole into the United States . . . any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an

7

> admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

Under the relevant regulation, if parole has not expired automatically, then it can be terminated with written notice to the noncitizen (1) "upon accomplishment of the purpose for which parole was authorized" or (2) "when in the opinion of" certain officials authorized to terminate parole, "neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States." 8 C.F.R. § 212.5(e)(2)(i).

Neither the statute nor the regulation provides an opportunity for the noncitizen to challenge whether the government complied with those requirements. Several courts in the Ninth Circuit have held that when the government seeks to revoke a noncitizen's parole under § 1182, due process requires (1) that the purpose of parole has been served or an appropriate official has determined that neither humanitarian reasons nor public benefit warrant continued parole; (2) written notice of the reasons for the termination; and (3) an opportunity to rebut the reasons given for the termination.[4]

The government argues that additional procedures are unnecessary here because Pleitez received written notice through the notice to appear. The government points to § 212.5(e)(2)(i), which states that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole, unless otherwise specified." But the notice to appear does not state that parole was revoked, that an authorized official made the requisite

---

[4] *See, e.g.*, *Mendez Oreilly v. Blanche*, No. 2:26-cv-00278-GMN-EJY, 2026 WL 1031192, at *3-5 (D. Nev. Apr. 16, 2026); *Velasquez-Chinga v. Noem*, No. 3:26-cv-00105-RBM-KSC, 2026 WL 311507, at *3 (S.D. Cal. Feb. 5, 2026); *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1164-66 (S.D. Cal. 2025).

antecedent findings to revoke, or the reasons parole was revoked.[5]  The lack of explanation for why parole was revoked raises the risk of an erroneous deprivation.

However, other factors in this case decrease that risk.  ICE detained Pleitez after he had accumulated two criminal convictions in less than a year, one for misdemeanor DUI and the other for felony attempted domestic battery by strangulation.  Thus, the risk that his parole was erroneously revoked is lower than in other cases where there has been no change in circumstances between when the noncitizen was paroled and when parole was revoked.  Additionally, the convictions increase the likelihood that an official decided that the public benefit no longer warranted his parole because he posed a danger to the community.  The second factor thus weighs in favor of some additional procedure, specifically, to allow Pleitez the opportunity to receive notice and an opportunity to be heard.

The government's "control over matters of immigration is a sovereign prerogative, largely within the control of the executive and the legislature," and that interest "must weigh heavily in the balance" of a due process analysis. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982).  "The government has an obvious interest in protecting the public from dangerous criminal aliens." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022) (quotation omitted).  Additionally, the government has an interest in detaining noncitizens to "increase the chance that, if ordered removed, the aliens will be successfully removed." *Id.* (simplified).

---

[5] *Cf. United States v. Lagarda-Aguilar*, 617 F.2d 527, 528 (9th Cir. 1980) (The court rejected the government's argument that "violation of the regulation requiring written notice made no difference in this case because the alien had actual notice of a termination by INS agents when they took him to the border" because the "argument assumes the very point in issue, i.e. that a termination ever occurred.  All that actually happened in this case was that INS agents physically expelled the appellant from this country.").

Balancing Pleitez's liberty interest with the risk of an erroneous deprivation, the utility of additional procedures, and the government's interest in detaining noncitizens who pose a danger to the community, the factors weigh in favor of a post-deprivation hearing in this case. The government's strong interest in protecting the public is heightened given Pleitez's two recent convictions, particularly where Pleitez has already received a bond hearing at which an IJ determined he was a danger. I understand Pleitez challenges that bond hearing in other counts of his petition. And the IJ's danger finding is not binding on me. But his two recent convictions and the fact that he has already been afforded a bond hearing that resulted in a negative danger finding weigh against his immediate release and instead weigh in favor of a post-deprivation hearing at which he can challenge his parole revocation. The cost to the government of providing Pleitez notice that (1) his parole is being revoked, (2) who decided to revoke his parole, and (3) on what grounds, followed by a hearing at which he can be heard on those issues, is "relatively minimal." *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at *9 (E.D. Cal. Apr. 21, 2025). The respondents have not suggested that a post-detention hearing regarding parole revocation would be unduly burdensome.

"The essence of procedural due process is that individuals whose [liberty] interests are at stake are entitled to notice and an opportunity to be heard." *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018) (quotation omitted). "[W]ritten notice is essential to effectuate a termination" of parole under § 1182(d)(5). *Lagarda-Aguilar*, 617 F.2d at 528. Pleitez did not receive notice that his parole was being revoked, that the decision was made by an authorized official, or the reasons for that revocation. He has not had an opportunity to be heard on those issues. Even if it is likely that the government revoked his parole due to his convictions, an authorized official

must actually make that decision, give Pleitez notice of the decision and the reasons for it, and provide him an opportunity to rebut it.

I therefore grant in part Pleitez's petition on ground one. I do not order his release. Instead, I order the government to provide Pleitez with notice that his parole has been revoked. The notice must (1) state that Pleitez's parole is being revoked; (2) identify who made the revocation decision with sufficient information to evaluate whether the person was an authorized official under the regulation; and (3) provide the grounds for the revocation decision. I also order the government to provide Pleitez with a hearing at which he can challenge his parole revocation unless he waives that hearing.

**III.   Ground Two – 8 U.S.C. § 1226(a)**

Ground two of Pleitez's petition alleges that his detention should be governed by 8 U.S.C. § 1226(a), not § 1225(b), and detention under § 1226(a) is warranted only if he is a flight risk or danger to the community. He concedes he has already had a bond hearing, but he asserts that I should order a "constitutionally adequate bond hearing, with the government bearing the burden of proving by clear and convincing evidence that [his] detention is warranted because he presents a risk of flight or danger to the community." ECF No. 8 at 11.

The government does not assert that § 1225(b)(2) applies in this case. I therefore grant this portion of ground two that his detention is not governed by § 1225(b)(2).

Pleitez argues that the government bears the burden in a § 1226(a) bond hearing. However, in *Rodriguez Diaz*, the Ninth Circuit rejected a claim that it is "constitutionally inadequate" for a noncitizen to bear the burden of proof at his initial immigration bond hearing. 53 F.4th at 1210. It instead held that "§ 1226(a)'s procedures satisfy due process, both facially and as applied" to the petitioner in that case. *Id.* at 1213. The Ninth Circuit did "not foreclose all

11

as-applied challenges to § 1226(a)'s procedures." *Id.* For example, it left open the question whether placing the burden on the noncitizen could create an unacceptably high risk of erroneous deprivation of the noncitizen's interest because the noncitizen experiences language and cultural barriers, difficulty obtaining evidence, and financial inability to hire an attorney. *Id.* at 1211.

Pleitez does not assert he faced similar issues. He raises an ineffective assistance of counsel argument in another claim, but even if his counsel was ineffective, he does not explain why that should result in the government bearing the burden at a new bond hearing. I therefore deny the portion of ground two of the petition that requests a new bond hearing at which the government bears the burden.

**IV.  Pleitez must exhaust his administrative remedies for grounds three, four, and five.**

The government argues that Pleitez's claims related to his bond hearing should be denied because he did not exhaust his administrative remedies by appealing the IJ's bond decision to the Board of Immigration Appeals (BIA). Alternatively, the government asserts these claims should be stayed until he exhausts his administrative remedies.

Pleitez replies that I should waive prudential exhaustion because the time to appeal has passed and no appeal was filed, so he can no longer pursue the administrative appeal process.[6] He also argues that because his counsel was ineffective at the bond hearing, "the record contained no appealable issues" and an appeal would have been futile. ECF No. 16 at 8. He argues that his counsel did not challenge whether § 1225(b)(2) applies to him, did not argue against the IJ sua sponte applying the Laken Riley Act to his attempt crime, did not question the IJ's failure to address the *Guerra*[7] factors, and did not present argument regarding factors that

_____

[6] Pleitez does not dispute that prudential exhaustion normally would be required. Instead, he requests that I waive the requirement in his case.

[7] *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

would weigh against Pleitez being considered a danger or a flight risk.  Pleitez thus contends his counsel's ineffectiveness at the bond hearing would have made an appeal futile.  Finally, he argues that I should waive the exhaustion requirement because he would suffer irreparable harm through continued unlawful detention.

A noncitizen in removal proceedings must appeal an IJ's adverse bond determination to the BIA before seeking habeas review. *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011).  If he does not, then "a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Id.*  This is a prudential requirement, not jurisdictional. *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017); *Alvarado v. Mattos*, No. 2:26-cv-00416-APG-DJA, 2026 WL 963227, at *2 (D. Nev. Apr. 9, 2026).  I may waive prudential exhaustion if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (quotation omitted).  The petitioner bears the burden of demonstrating at least one of these factors applies. *See Ortega-Rangel v. Sessions*, 313 F. Supp. 3d 993, 1003 (N.D. Cal. 2018).

The Ninth Circuit has previously rejected the argument that exhaustion is excused because the time to appeal has passed. *Laing*, 370 F.3d at 998 (holding that "the untimely filing of a petition to review a decision by the BIA does not constitute the exhaustion of judicial remedies").  "To allow a party to hopscotch over judicial review requirements by simply waiting for them to expire would eviscerate the exhaustion doctrine" and would permit noncitizens "to bypass the deadlines and pathways of judicial review prescribed by the INA" and regulations. *Id.*

at 999-1000.  Thus, the fact that Pleitez did not timely appeal does not support waiving prudential exhaustion.

I also do not waive the requirement based on futility arising from counsel's asserted ineffectiveness.  The IJ did not apply § 1225(b)(2), so counsel's failure to contest that section's applicability did not prejudice Pleitez.  The facts surrounding the IJ's sua sponte discussion of the Laken Riley Act and her potential belief that the conviction was for the completed crime rather than an attempt are on the record at the bond hearing, so it is not apparent that appeal on that issue would be futile.  As for counsel's arguments regarding dangerousness and flight, there is reference at the bond hearing to Pleitez having filed a bond request.  *See* ECF No. 10 at 0:00:50; *see also id.* at 0:03:40 (the IJ asking Pleitez's counsel "nothing further to add to what you've already filed?").  Thus, it appears that Pleitez or his counsel filed a document that may have raised the arguments about mitigating factors that Pleitez claims counsel should have argued at the hearing.  Because Pleitez did not provide evidence of that bond request, he has not shown that the bond request failed to preserve any appealable issues such that appeal would have been futile.  Additionally, counsel mentioned at the bond hearing that Pleitez's time in the country and his family and community ties would mitigate the impact of his convictions.  *Id.* at 0:01:45.  Pleitez therefore fails to demonstrate that his claim that the IJ erred by finding him a danger to the community was not an appealable issue.  Nor has he shown that counsel's alleged ineffectiveness at the bond hearing could not be raised on appeal.  Consequently, I do not waive exhaustion based on futility.

Finally, I do not waive exhaustion based on irreparable harm because Pleitez assumes his detention is unlawful.  But that argument would apply to any petitioner who believed an IJ made a legally erroneous dangerousness finding at a bond hearing or improperly applied the Laken

Riley Act, thereby creating a loophole in the appeal process. Because I decline to waive prudential exhaustion, I dismiss without prejudice grounds three, four, and five of the amended petition for failure to exhaust.

**V. Conclusion**

I THEREFORE ORDER that petitioner Moises Pleitez Castillo's amended petition **(ECF No. 8) is GRANTED in part**. Pleitez's detention is not governed by 8 U.S.C. § 1225(b)(2).

I FURTHER ORDER that by July 15, 2026, the respondents (other than Warden John Mattos) must provide petitioner Moises Pleitez Castillo with written notice (1) stating that Pleitez's parole is being revoked; (2) identifying who made the revocation decision with sufficient information to evaluate whether the person was an authorized official under the regulation; and (3) providing the grounds for the revocation decision.

I FURTHER ORDER that by July 22, 2026, the respondents must provide Pleitez with a hearing before an immigration judge at which he can challenge his parole revocation unless he waives that hearing.

I FURTHER ORDER that grounds three, four, and five of Pleitez's amended petition are dismissed without prejudice for failure to exhaust administrative remedies.

I FURTHER ORDER the clerk of court to close this case.

DATED this 8th day of July, 2026.

_____
ANDREW P. GORDON
CHIEF UNITED STATES DISTRICT JUDGE

15